

**APP**
Richard F. Bergen
2700 Cloudsdale Circle
Las Vegas, Nevada 89117
(702) 938-0888
mlmconsultants@cox.net
*Plaintiff self-represented*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Richard F. Bergen,<br><br>Plaintiff,<br><br>vs.<br><br>ZBS Law, LLP; Sables, LLC; Servis One, Inc., d/b/a/ BSI Financial Services; WSFS Financial Corporation; Brougham REO Owner, L.P.; MERSCORP Holdings, Inc.; Deutsche Bank National Trust Company as Trustee of the LSF MRA Pass-Through Trust; Eighth Judicial District Court of Clark County, Nevada; Nevada Court of Appeals; Nevada Supreme Court; Las Vegas Justice Court; Does 1 through 10; Roe Corporations 1 through 10,<br><br>Defendants. | 2:21-cv-01983-JAD-NJK<br><br>***EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE and MOTION FOR PRELIMINARY INJUNCTION (F.R.C.P. 65 et seq.)** |

Richard F. Bergen, Plaintiff *self-represented* ("Plaintiff"), hereby submits this Application for a Temporary Restraining Order and a hearing date for the Motion for a Preliminary Injunction, enjoining all parties (as well as the Sheriff of Clark County) from executing a "Temporary Writ of Restitution" upon Plaintiff's real property and primary residence located at 2700 Cloudsdale Circle, Las Vegas, Nevada 89117.

/ / /

/ / /

/ / /

/ / /

This *Ex Parte* Application and Motion are made and based upon the following Memorandum of Points and Authorities; the Affidavit attached hereto; the Complaint and all exhibits on file in the instant case; and any argument at the time of hearing on the matter.

Dated this 28th day of October, 2021.

Richard F. Bergen
2700 Cloudsdale Circle
Las Vegas, Nevada 89117
(702) 938-0888
mlmconsultants@cox.net
*Plaintiff self-represented*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This is an action to stop an ongoing eviction process – currently scheduled for **November 4, 2021** – by Defendant Brougham REO Owner, L.P. ("Brougham"), an entity lacking authority and standing, basing its purported claim of "ownership" directly from a fabricated "grant deed" issued by another entity which conducted a fraudulent non-judicial foreclosure while litigation was pending, which itself stems from a long list of fabricated "transfer" instruments and a false "accounting" for the mortgage "debt" from a securitized loan. Beginning in or around 2013, all of the entities involved in this seemingly never-ending game of "musical chairs" have been represented by, and/or controlled by, the attorneys at ZBS Law, LLP ("ZBS").

This same foreclosure was attempted multiple times without success by way of the Nevada Foreclosure Mediation Program, because the mediators quickly determined that the entities were lacking authority and that the "chain of title" documents were defective. However, the Defendant law firm of ZBS simply continued to fabricate and record additional instruments for additional unauthorized entities, while corrupting both the foreclosure mediation procedures, and the judicial process, in the hope that one combination will eventually "work" – as if piling

up more false title-related documents onto the existing, already-proven to be broken, defective and/or fraudulent "chain of title" will somehow "fix" that which cannot be fixed without judicial intervention (i.e., "quiet title"). Unfortunately for the Plaintiff, as well as the People of Nevada, ZBS is one of those law firms that has made a career from escaping scrutiny, knowing that borrowers who challenge securitized mortgage loans will never be afforded a "full and fair" opportunity to litigate the facts and introduce the truth in any Nevada courtroom; and knowing that they will "get away with" their continuing violation of Nevada law, attorney ethics, Rules of Professional Conduct, and other fraudulent behavior, without reprisal.

And yet, proving that all of the entities ZBS has "thrown" into the mix, including their current evicting entity, lack authority, is the simplest of tasks: just "follow the money trail." If the Court wants finally to get to the bottom of this tortuous history of impostors, all it need examine is the true "payment history" of Plaintiff Richard F. Bergen's mortgage payments, and it will be revealed that once the loan was securitized, all subsequent entities who have attempted to foreclose have misrepresented the "debt," lied about "ownership," and concealed the truth – just to facilitate the theft of property and money.

## II.

## STATEMENT OF FACTS

Plaintiff's mortgage loan was securitized at or near the time of origination (July 25, 2007), as were most loans during the period. It was not until September of 2009, however, that the securitized trust was named in a publicly-recorded instrument ("Assignment of Deed of Trust") relating to the loan. This has become typical when the borrower misses one or more payments and various "hidden" entities claiming "ownership" begin "circling the wagons" in preparation for foreclosure. The securitized trust named in the 2009 Assignment is the LSF-MRA Pass-Through Trust, whose trustee (at the time) was Deutsche Bank National Trust Company. This was a "private label" securitization, and as such, did not file the numerous required documents with the U.S. Securities and Exchange Commission. Nevertheless, this trust was found listed on the "DealX" website as a "Residential Mortgage-Backed Security" where it is still listed today (see Exhibit "1").

Subsequent to the securitization of Plaintiff's loan, there has been a seemingly endless parade of attempts to foreclose by parties who had no authority to do so, aided by their attorneys, whose efforts are spent entirely on corrupting the judicial process so that the truth never becomes part of the record. Plaintiff asserts that the main reasons for this pattern of fraud are that once Plaintiff's loan was securitized – which caused his mortgage payments to be "pooled" ("commingled") with payments from many other borrowers, and then from "slices" ("tranches") of this pool, "returns" were paid to secondary-market investors under terms and conditions which are foreign to those in Plaintiff's loan documents – (1) it became **impossible to "un-commingle" the combined payments;** (2) Plaintiff's payments were **permanently converted to a purpose contrary to the terms represented in the loan documents** (a securities transaction funded by Plaintiff and other borrowers without their knowledge or consent); (3) it also became **impossible to determine the amount of any single payment remitted by Plaintiff which was received by any specific investor;** but most critically, (4) no matter what the amounts were that were received by the ultimate recipients, **none of these secondary-market investors had the capacity to "apply" any mortgage payments toward the reduction of "interest" and "principal"** as required of the "lender" (or its successor) in the terms of the loan documents. Essentially, Plaintiff's mortgage payments were paid out to strangers, to whom Plaintiff owed nothing.

Because the proper application of mortgage payments is the ONLY way the borrower may pay down, and eventually pay off, his loan, the result of securitization is that NONE of the borrower's payments ever legally reduced the amounts of "interest" and "principal" on the "debt obligation" by a single dollar, contrary to the requirements of the "lender" as represented in the loan documents. Plaintiff asserts that this is perhaps the "big secret" that proves the fraudulent and defective nature of securitization.

Therefore, Plaintiff argues that once this defective conversion of his mortgage payments occurred, two problems were created for any successive entity which might attempt to foreclose: (1) there was no possible way any subsequent "transferee" could legally claim it acquired "ownership" of the "mortgage loan" from the securitized trust (because it was no

longer the same "mortgage loan" as described in the loan documents); and even more significantly, (2) the true and correct "accounting" from the securitization transaction would show several years' worth of monthly mortgage payments that were never "received" and "applied" toward the reduction of "interest" and "principal" by any legitimate "creditor" on its books and records for tax purposes.

On this basis, Mr. Bergen's loan "payment history," if accurately reported, would disclose month after month of payments remitted that reduced NOTHING – no "interest," no "principal" – on his debt "obligation." This clear evidence of fraud, obviously, is the reason that entities attempting to foreclose on loans which have been securitized must use a fabricated, false, "off-balance sheet" accounting – one that exists nowhere except in the fabricated "evidence" of foreclosure fraud – as a "replacement" of the truth.

As counterintuitive as all this seems to some, it also appears to be common knowledge in some jurisdictions, who have made a conscious decision to deny borrowers any and all access to the process of justice. Borrowers are routinely told that they have "no standing" to challenge any of the purported "assignments" of their loan, or any of the elements of the securitization of the loan and the payments. Courts which otherwise do a stellar job getting to the smallest details of some matters, become nothing but roadblocks when it comes to challenges of foreclosures – even *valid* ones. Plaintiff's history in the Nevada courts serves as a living example. Never once was the transaction examined by any court. Never once was an accounting for the misapplication of mortgage payments ordered or vetted. Never once was the veracity of any "assignment" tested for the reliability of the statements made therein, and/or for the signatures of the persons whose names appear thereon. Never once was it determined by evidentiary proceedings that "value" was paid for any purported "transfer" of the rights of enforcement or ownership, as required under Nevada law at NRS 104.9203(2)(a).

Plaintiff is still entitled to a "full and fair" opportunity to litigate the facts in this matter. As the borrower in this transaction, he has the right to know exactly what happened to his money, and whether the foreclosing party "du jour" actually has the authority to do so. Isn't it interesting, therefore, that the ZBS attorneys always aggressively argue that he has no such

right; that the truth should not become part of the record; that since he filed a case before, he is permanently barred from ever filing another; etc., when this whole controversy could be decided, once and for all, with a true showing for how every mortgage payment was handled, from payment to recipient. In fact, for the numerous "clients" represented by ZBS throughout the years (with the exception of the one attempting to evict Mr. Bergen currently), all it would take is one simple showing of how they supposedly acquired the "accounting" for the mortgage payments and the loan balances from previous entities in the "chain" to prove whether authority exists or not.

The ZBS law firm's contempt for the legal process was on full display during Mr. Bergen's most recent lawsuit in Clark County District Court (Case No. A-19-794170-C, Dept. 28), where the attorneys for this firm conducted a fraudulent non-judicial foreclosure ***while the case was pending.*** The more one examines the events, the more it appears that foreclosure matters are pre-decided long before a case ever goes to trial, and the more it appears that some law firms have an "inside track" by knowing that their fraud will be "protected" by judges.

As for Defendant Brougham REO Owner, L.P., a quick review of the numerous defects and violations of the statutory process for its "Unlawful Detainer" action (Case No. 21-C-014337, Dept. 4) committed by this entity and its attorney will demonstrate, not only that the Las Vegas Justice Court seems to be operating as just another "enforcement arm" for unauthorized foreclosing entities, but also, that the attorneys for ZBS have come "full circle" by arguing that their conscious disregard for the law "does not prejudice" the opposing party.

Therefore, Plaintiff seeks a protective order so that the "Writ of Restitution" scheduled to be executed November 4, 2021, is not executed. Defendant Brougham REO Owner, L.P., and its attorneys, ZBS Law, LLP, should be enjoined from all further attempts to take Mr. Bergen's property until the disputed matters raised in the instant case are judicially resolved. The "status quo" should be maintained because (1) Mr. Bergen has a high likelihood of success on the true merits of this case; and (2) Brougham will not suffer any "injury" or "loss" by simply being prevented from completing the illegal theft of Mr. Bergen's home. For these same reasons, Mr. Bergen requests a nominal bond, or that the bond be waived entirely.

## III.

## STATEMENT OF LAW

Plaintiff respectfully requests that this Honorable Court enter a temporary restraining order pending the hearing on the preliminary injunction. This Court has the authority to grant the relief requested. Federal Rule of Civil Procedure 65 states, in pertinent part:

> Rule 65. Injunctions and Restraining Orders
>
> (a) Preliminary Injunction.
>
> (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) Consolidating the Hearing With the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
>
> (b) Temporary Restraining Order.
>
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> (2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry — not to exceed 14 days — that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.
>
> (3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
>
> (4) Motion to Dissolve. On 2 days' notice to the party who

> obtained the order without notice — or on shorter notice set by the court — the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

According to Nevada standards, "The granting, refusing or dissolving of injunctions or restraining orders is a matter of discretion." See Coronet Homes, Inc. v. Mylan, 84 Nev. 435, 437, 442 P.2d 901, 902 (1968) citing Thorn v. Sweeney, 12 Nev. 251 (1877).

The Nevada Supreme Court has issued rulings in harmony with the above rule, stating, "A preliminary injunction is available when a party seeking the injunction can demonstrate that the nonmoving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory relief is inadequate and that the moving party has a reasonable likelihood of success on the merits." *Boulder Oaks Community Association v. B & J Andrews Enterprises, LLC.*, 123 Nev. Adv. Op. No. 46 (2007).

In considering preliminary injunctions, courts also weigh the potential hardships to the relative parties and others, and the public interest. See, e.g. Clark Co. School Dist. v. Buchanan, 112 Nev. 1146, 1150, 924 P.2d 716, 719 (1996).

The Supreme Court wrote: "In *Farnow v. District Court*, 64 Nev. 109, 118, 178 P.2d 371, 375 (1947), we explained that:

'*Ex parte* motions, that is, motions without notice, are of various kinds and are frequently and commonly permitted under the Nevada law and practice. They are frequently permissible in procedural matters, and also in situations and under circumstances of emergency, as in the case of an application for an injunction to prevent irreparable injury which would result from delay, and where there is no plain, speedy and adequate remedy at law.'"

Similarly, in *Rhodes Co. v. Belleville Co.*, 32 Nev. 230, 239, 106 P. 561, 563 (1910), the court reiterated:

"A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is

granted." *Dangberg Holdings Nevada, L.L.C. v. Douglas County*, 115 Nev. 129,142-143,978 P.2d 311 (1999).

Federal standards are very similar.

Plaintiff has stated sufficient facts that show immediate and irreparable injury will result if the eviction takes place as scheduled before the instant case is resolved, particularly in light of the fact that Plaintiff has a high likelihood of success, as long as the actual "merits" of this matter are allowed to be litigated, vetted, and determined.

In addition, Plaintiff attempted to contact ZBS Law via e-mail on October 28, 2021, the same day this Application was made with the Court. Plaintiff clearly stated his intent to file this request for protection. Plaintiff will make every effort to serve Defendants Brougham and ZBS, the principal parties to the threatened eviction, with the Summons, Complaint, and the Ex Parte Application for TRO immediately following the filing of the case.

Finally, Plaintiff alleges that to require a significant bond for the protection will also deny him procedural due process rights. Therefore, Plaintiff respectfully requests a nominal bond, or no bond.

**IV.**

**CONCLUSION**

Given the circumstances as described herein, the request for a Temporary Restraining Order is of critical importance to enjoin the named parties, and the Sheriff of Clark County, from executing the "Temporary Writ of Restitution" pending resolution of the issues central to this action pertaining to title and authority of the parties.

Since it is Plaintiff's contention that he can prove, conclusively, that Defendant Brougham's "unlawful detainer" action was improperly commenced; and that any purported "foreclosure sale" upon which Brougham's claim of "ownership" stems was also improperly conducted, Plaintiff has a high likelihood of success in this matter and the "status quo" should be preserved accordingly.

In addition, because of the lack of authority of the foreclosing party, as well as the lack of standing of Brougham REO Owner, LP, the bond attached to the protective order should be

nominal (to cover costs only), or waived entirely, as these Defendants will not, and cannot, suffer any "loss" or "injury" by simply being kept from completing the illegal theft of Mr. Bergen's home.

Plaintiff is confident that at the hearing to determine whether the Temporary Restraining Order should be extended, he can provide a showing that all attempts to foreclose by entities represented by ZBS attorneys were totally unauthorized and fraudulent, based on fabrications of "transfers" of ownership, and a false "accounting" for the purported "debt" which always omitted the truth regarding what actually happened with Mr. Bergen's mortgage payments when the loan was securitized – which, as at least one record shows, could still be the case.

Dated this 28th day of October, 2021.

Richard F. Bergen
2700 Cloudsdale Circle
Las Vegas, Nevada 89117
(702) 938-0888
mlmconsultants@cox.net
*Plaintiff self-represented*

**AFFIDAVIT**

I, Richard F. Bergen, am the Plaintiff in the above-entitled action. I have read the foregoing **EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE and MOTION FOR PRELIMINARY INJUNCTION** and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

Richard F. Bergen

STATE OF NEVADA )
) s.s.
COUNTY OF CLARK )

This instrument was acknowledged before me on the 28th day of October, 2021, by Richard F. Bergen.

(Signature of Notary)

(Notary Seal) →

VINCENT HERNANDEZ
Notary Public, State of Nevada
Appointment No. 17-3445-1
My Appt. Expires Aug 31, 2025

# EXHIBIT "1"




Report Stream

Sign In

News Feed

# LSF MRA Pass-Through Trust

RMBS | Private | Deutsche Bank

Deal Feed

## Deal Activity

**Filter feed:** Event: All